IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLENE WEBSTER,                    )
                                     )
                  Plaintiff,         )
                                     )
     v.                              )    No.  04 C 3242
                                     )
JOHN POTTER, etc. et al.,            )
                                     )
                  Defendants.        )

## MEMORANDUM OPINION AND ORDER

When Postmaster General John Potter filed a Fed. R. Civ. P.
("Rule") 56 motion for summary judgment in the sex discrimination
action brought by Postal Service employee Charlene Webster
("Webster"),[1] this Court followed its invariable practice of
providing Webster, as a pro se plaintiff, with the attached
explanation of Rule 56 and this District Court's LR 56.1, adopted
to facilitate the handling of summary judgment motions.[2]

Despite the clarity of this Court's letter and LR
56.1(b)(3), what Webster tendered on the last day of the month –
long period that this Court had allowed for her response is a

---

[1] Although every Title VII action by a federal employee
must name the head of the employing agency as the sole defendant
(42 U.S.C. §2000e-16(c)), Postmaster General Potter played no
personal part in the allegedly discriminatory actions relied on
by Webster as the basis for her claim.  Accordingly this opinion
will more realistically (although not accurately in purely
technical terms) refer to the United States as defendant here.

[2] That June 14, 2005 letter notification enclosed copies of
Rule 56 and LR 56.1. To its credit, the United States also served
Webster with a more abbreviated notification (except for
attaching copies of the Rule and LR).

packet of miscellaneous papers that neither responds to the
United States' LR 56.1(a)(3) statement nor sets out her own
statement of material facts as required by LR 56.1(b)(3). Just
to look at that undifferentiated and motley set of documents
serves as a graphic illustration of why this District Court
adopted LR 56.1 as a vehicle to smoke out the existence or
nonexistence of factual issues that would contraindicate the
granting of summary judgment and, just as importantly, why our
Court of Appeals has consistently met noncompliance with the LR's
requirements with strict enforcement of its terms.

     In that respect LR 56.1's enforcement provision states that
"[a]ll material facts set forth in the statement required of the
moving party will be deemed admitted unless controverted by the
statement of the opposing party." And our Court of Appeals has
"consistently held that failure to respond by the nonmovant as
mandated by the local rules results in an admission" (Smith v.
Lamz, 321 F.3d 680, 683 (7th Cir. 2003)). Hence this opinion
proceeds on the basis of the facts adduced by the United States
which are not only an eminently fair presentation but are also
not effectively controverted by Webster's submissions.

## Facts

     As already indicated, as prescribed by LR 56.1(a)(3) the
United States has submitted its comprehensive statement of
material facts, properly crediting Webster's earlier factual

2

submissions for purposes of the present motion. Because those facts are accurately summarized in the United States' supporting memorandum, this opinion attaches and incorporates the "Factual Background" section of that memorandum as the factual matrix for decision of the issues.

## Summary Judgment Principles

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant must produce "more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Those standards have been employed in the discussion that follows.

## Application of the Summary Judgment Principles

Familiar caselaw teaches that the plaintiff in a Title VII case may establish the requisite genuine issue or issue of

3

material fact either through direct evidence of discrimination or via the burden-shifting approach of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Here Webster has adduced no direct evidence, so she must follow the <u>McDonnell Douglas</u> path that begins with establishment of the oft-repeated four-factor prima facie case as set out in <u>Gusewelle v. City of Wood River</u>, 374 F.3d 569, 574 (7th Cir. 2004)(adapted to a female plaintiff):

> To do this, a plaintiff must show: (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) a similarly situated employee not of the protected class was treated more favorably.

By definition any woman employee meets the first of those conditions. And on Webster's version of events, which must be credited for Rule 56 purposes, it cannot be said that she does not satisfy the second condition as a matter of law. Where Webster's claim succumbs instead are on both the third and the fourth elements of the prima facie case.

As for the existence of an "adverse employment action," that concept has been extended in this circuit beyond such obvious examples as a firing or a reduction in benefits or pay. But even so some really meaningful detriment must be involved--<u>Smart v. Ball State Univ.</u>, 89 F.3d 437, 441 (7th Cir. 1996) exemplifies the sensible judicial approach to the issue, following this articulation of the principle with several other examples that, as in <u>Smart</u>, were found <u>not</u> to meet the standard:

4

> While adverse employment actions extend beyond readily
> quantifiable losses, not everything that makes an
> employee unhappy is an actionable adverse action.
> Otherwise, minor and even trivial employment actions
> that "an irritable, chip-on-the-shoulder employee did
> not like would form the basis of a discrimination
> suit."

None of the minor--essentially trivial--sex-oriented complaints voiced by Webster, either singly or in the aggregate, meet the test. Instead the only four instances of purported sex discrimination that she has adduced occurred when (1) she was denied assistance with her route, (2) she was not allowed to go home for lunch, (3) a male was once permitted to leave work early but marked as working overtime and (4) she was once disciplined for running out of gas. Such cases as Griffin v. Potter, 356 F.3d 824, 829-30 (7th Cir. 2004) (involving a strikingly parallel series of complaints brought under the age discrimination rubric, which follows the same principles) and Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 505 (7th Cir. 2004) (involving the sex discrimination area) spell doom for Webster's claim of having suffered "adverse employment action."

As if that alone were not enough to call for dismissal of this action (and it is), Webster has also not raised a material factual issue as to similarly situated male employees having been treated more favorably. In that respect she "must demonstrate that there is someone who is directly comparable to [her] in all material respects" (Grayson v. O'Neill, 308 F.3d 808, 819 (7th

5

Cir. 2002)). <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617-18 (7th Cir. 2000)(citations omitted) spells out the operative ground rules:

> In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case. For example, in disciplinary cases-in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason-a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

Again Webster's claims fall short, either because both some male <u>and</u> some female mail carriers were treated more favorably (thus undercutting any notion of <u>sex</u>-based discrimination) or that there has been no showing that "similarly situated" mail carriers were treated differently. Moreover, there has also been no showing of an identity of supervisors or as to the reasons for the actions complained of.

Two final comments are in order. Here they are:

1. Webster's grab bag of complaints, other than the few mentioned above, reflect personality conflicts and obvious animosities between her and her managers (indeed, she really admits as much). Those issues simply do not qualify as sex discrimination.

2. As the attached "Factual Background" has reflected,

6

much of what Webster asserts falls in the category of hearsay. That type of assertion, because it would be inadmissible in evidentiary terms at trial, is not cognizable for summary judgment purposes either--see Rule 56(e) and, e.g., <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 68 (7th Cir. 1995).

### Conclusion

For the several reasons stated in this memorandum opinion and order, Webster's assertions--take at their best--do not pose any genuine issue of material fact that would stave off summary judgment. Accordingly the United States' Rule 56 motion is granted, and this action is dismissed with prejudice.

Milton I. Shadur
Senior United States District Judge

Date: August 30, 2005

June 14, 2005

Ms. Charlene Webster
11652 South Vincennes
Chicago IL 60643

                    Re:   Webster v. Rudolph, et al.
                          No. 04 C 3242

Dear Ms. Webster:

As you know, the employment discrimination lawsuit that you
have brought against Postmaster General John Potter ("defendant")
is now pending on my calendar. As I ordered during yesterday's
status hearing, on or before July 29 defendant will file his
motion for summary judgment, together with supporting papers, in
accordance with Rule 56 of the Federal Rules of Civil Procedure.

As contemplated by Rule 56, I have also ordered that any
responsive materials that you thereafter plan to file must be
submitted--mailed to me in my chambers--in time to arrive here on
or before August 29, 2005. When I have reached my decision on
the motion, my minute clerk will advise both you and defense
counsel to that effect.

Because of the importance and potentially final nature of a
summary judgment motion, this letter is intended to inform you of
the consequences if you were to ignore the Court's order, or if
any materials that you do submit are legally insufficient. By
his motion for summary judgment, defendant is asking to have the
suit decided in his favor without a full-scale trial, based on
the evidence presented in the documents to be attached to his
motion. Unless you answer the motion with your own affidavits or
properly supported documentary evidence or both, only defendant's
evidence will be before this Court. Thus your failure to respond
in that way would be the equivalent of your failing to present
any evidence in your favor at a trial.

Under Rule 56(e), a copy of which is enclosed, you may not
simply rest on any unsworn documents that you may previously have
filed in court. Such documents are not a proper response to a
motion for summary judgment. Under the same Rule, if you do not
submit timely affidavits or documentary evidence, I may accept
the facts that have been declared in defendant's submission as

true and (if those facts justify a decision in defendant's favor)
may enter summary judgment against you. In that event you will
have lost your case, and judgment will be entered in defendant's
favor.

That same result may follow if any matters that you do
submit are not legally sufficient to establish your claim against
defendant. Of course I am not in a position to indicate what is
necessary for that purpose. Instead I will simply evaluate any
submission that you choose to file on or before the August 29
deadline.

To assist judges in determining whether any factual disputes
exist and, if they do, whether such disputes are legally
significant, our District Court has adopted its own rules--LR
56.1 and 56.2, photocopies of which are also enclosed--to
supplement Rule 56. Defendant will be expected to comply with LR
56.1(a) by providing his Statement of Uncontested Facts. As part
of any submission you choose to file, you will be expected to
comply with LR 56.1(b) (as you will note, that Rule specifically
provides that unless your own statement in response shows that
any part or parts of defendant's LR 56.1(a) statement is or are
disputed, the statement [or the parts not identified by you as in
dispute] will be considered as having been admitted by you).

Sincerely,


MIS:wb                    Milton I. Shadur
enclosure

cc:  Samuel D. Brooks, Esq., Assistant U.S. Attorney

## Factual Background

Webster works as a mail carrier for the Postal Service at its Morgan Park facility where she delivers mail along a particular route, works a set hourly shift, is guaranteed certain days off, and can work overtime at her option. Def. Stmt. ¶ 2.[1] Approximately 50 to 60 mail carriers, each with their own route, worked at the Morgan Park facility during the period at issue in this lawsuit. *Id.*

Webster contends that Rufus Moore, Rachel Rudolph, Pierre Adams, Tamara Bowen and Richard Thompson discriminated against her on the basis of sex in violation of Title VII. Def. Stmt. ¶¶ 1, 3. Moore, Rudolph and Adams were Webster's supervisors and Bowen and Thompson were in training to become supervisors at the time she alleges they discriminated against her. Def. Stmt. ¶ 3.

At the time of the alleged sex discrimination, Webster delivered mail along Route 4364. Def. Stmt. ¶ 4. In February 2000, the total number of mail delivery routes at the Morgan Park facility was reduced and, as a result, each of the remaining routes were adjusted by increasing the number of blocks assigned to each route. Def. Stmt. ¶ 5. As a consequence of the facility-wide route adjustments, some blocks were added to Webster's mail delivery route. *Id.* Webster contends that after the February 2000 route adjustments, she could not complete her route within her eight-hour shift. Def. Stmt. ¶ 6. She acknowledges that after the route adjustments other male and female mail carriers were also unable to complete their routes within their eight-hour shifts. *Id.*

Webster began experiencing difficulty with her route and supervisors in April 2000; however, these problems ended in December 2000 when she changed to a different mail delivery route. Def.

---

[1] "Def. Stmt." references are to the numbered paragraphs of defendant's Local Rule 56.1 Statement of Material Facts.

Stmt. ¶ 7. During the time she experienced problems, Webster contends that she experienced sex discrimination when: (1) she was denied assistance with Route 4364; (2) she was not allowed to go home for lunch even though two males could; (3) a male was once permitted to leave work early but marked as working a full day; and (4) she was once disciplined for running out of gas, but later heard that a male was not disciplined for running out of gas. Def. Stmt. ¶ 8. These are the only four incidents Webster contends occurred because of her sex. *Id.*

Between March and September 2000, Webster completed a Form 3996 every day to request assistance completing her route. Def. Stmt. ¶ 9. Form 3996 was used to request either (a) the assistance of additional personnel or (b) the use of overtime when a mail carrier could not complete a route within the eight-hour shift. *Id.* When Webster requested assistance completing her route, Moore, Adams and Rudolph sometimes approved the assistance and sometimes denied it. Def. Stmt. ¶ 10. Webster believes that when Moore, Adams and/or Rudolph denied her requests for assistance, they did so because they believed that she should have been able to complete her route within her eight-hour shift without assistance. Def. Stmt. ¶ 12. Webster testified that she obtained assistance approximately 32% of the time; otherwise, if she completed the route, she used overtime. *Id.* Webster also testified that approximately 20% of the time she did not work overtime to complete her route and instead returned undelivered mail to the facility. *Id.*

Following the February 2000 route adjustments, Webster does not know whether most of the other male and female mail carriers who were unable to complete their routes within their eight-hour shifts requested assistance to complete their routes. Def. Stmt. ¶ 11. Webster believes that these mail carriers performed overtime to complete their routes. *Id.* Webster testified that during the period February thru December 2000, one female mail carrier, Gwen Richardson, did require

3

assistance to complete her route, and she further testified that Moore, Rudolph and Adams always provided Ms. Richardson with the requested assistance. Def. Stmt. ¶ 14.

After Webster began a different mail delivery route in December 2000, Route 4364 was taken over by Mr. Lionel Gibson, then Mr. David Duggan and later, Ms. Lisa Ferguson. Def. Stmt. ¶ 13. When they needed it, each of these mail carriers was provided assistance or performed overtime to complete the route. *Id.* Webster is uncertain which supervisors authorized the assistance for these mail carriers and is uncertain why these mail carriers received assistance and she did not. *Id.*

Webster testified that on June 7, 2000, Moore told her that she could no longer take lunch at her mother's house. Def. Stmt. 15. She does not know why Moore told her this. *Id.* Webster contends that Mr. Samuel Brinson and Mr. Floyd Mitchell went to their homes for lunch because she saw their home addresses listed on a form used to authorize lunch locations; however, she testified that she did not see Brinson or Mitchell go home for lunch after the February 2000 route adjustments and does not know whether Moore told them they could no longer go home for lunch. Def. Stmt. ¶ 15.

Webster contends that Adams once permitted mail carrier Keith Whitted to leave work early before completing overtime; however, she does not know why Adams allowed Whitted to leave early, is only aware of this one incident, and is not aware that anyone else was ever allowed to leave early before completing their overtime. Def. Stmt. ¶ 16.

Webster testified that she was once disciplined by Thompson for running out of gas on her route, even though Thompson allowed her to obtain gas on her lunch break. Def. Stmt. ¶ 17. She contends that Darius Witherspoon told her that "they" did not discipline him for running out of gas on his route and actually brought him gas; however, Webster does not know the identity of the

4

persons Witherspoon referenced in his statement and has no first hand knowledge of Witherspoon's claims. *Id.*

In addition to her four claims of discrimination on the basis of sex, Webster contends that she suffered discrimination based on "disparate treatment" when, among other incidents, (a) Rudolph told her what to do even though Rudolph had never been a mail carrier, (b) she received suspensions, and (c) she had to provide documentation to substantiate a sick leave request. Def. Stmt. ¶ 18. However, excluding her four claims of discrimination on the basis of sex, Webster contends that all of her other claims in this case occurred because of personal animosity between her managers and herself. *Id.*

## Argument

### I. Legal Standard

On a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmovant. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). Nonetheless, the nonmovant must present more than a scintilla of evidence to successfully oppose the motion. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir. 1994). To avoid summary judgment, (s)he must designate specific facts, rather than conclusory allegations, showing a genuine issue that might affect the outcome of the suit. *Beck Oil Co., Inc. v. Texaco Ref. & Mktg., Inc.*, 25 F.3d 559, 561 (7th Cir. 1994); *see also Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996)(conclusory allegations are insufficient to create a genuine issue of material fact). In this case, Webster cannot present any evidence raising a genuine issue of material fact precluding summary judgment on her discrimination claims.

5